IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANN CAVLOVIC,                           )
individually and on behalf of           )
those similarly situated,               )
                                        )
                          Plaintiff,    )
                                        )
v.                                      )          Case No. 17-cv-2042-JAR-TJJ
                                        )
J.C. PENNEY CORPORATION, INC.,          )
                                        )
                          Defendant.    )

## MEMORANDUM AND ORDER

Plaintiff Ann Cavlovic brings this putative class action against Defendant J.C. Penney Corporation,[1] asserting claims for violations of the Kansas Consumer Protection Act ("KCPA")[2] and unjust enrichment. Plaintiff alleges Defendant's advertisements of its "original," "regular," "former," and "sale" prices and their corresponding price discounts are fraudulent and deceptive. This matter is before the Court on Defendant's Motion to Stay Proceedings and Compel Arbitration (ECF No. 31). Defendant requests that the Court stay these proceedings and compel Plaintiff to arbitrate her individual, non-class claims pursuant to arbitration provisions in her JCPenney credit card agreement and JCPenney rewards program agreement. For the reasons discussed below, the motion to compel arbitration is denied.[3]

---

[1] Plaintiff filed her Class Action Petition for Damages (ECF No. 1-1) in Wyandotte County District Court on December 16, 2016. Defendant removed the case to federal court on January 20, 2017.

[2] K.S.A. 50-623 et seq.

[3] This motion was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b). *See* Order Referring Motion, ECF No. 40. The undersigned Magistrate Judge will enter a memorandum and order rather than a report and recommendation because cases from the District of Kansas have held that a motion to stay proceedings and compel arbitration is non-dispositive and within the magistrate judge's authority. *See Wilken Partners, L.P. v. Champps Operating Corp.*, No. 11-CV-1005-EFM-KGG, 2011 WL

I.    **Summary of the Parties' Arguments**

Defendant argues all of Plaintiff's claims are subject to binding, individual (non-class) arbitration under two separate arbitration agreements: one set out in her credit card agreement and one set out in the terms and conditions of Defendant's rewards program. Defendant argues that, because Plaintiff used her JCPenney credit card on September 23, 2014 to purchase the gold hoop earrings that are the basis for her claims against Defendant for fraudulent and deceptive advertising of prices and discounts on that jewelry, Plaintiff's claims are subject to arbitration pursuant to the terms of her credit card agreement. Defendant alternatively argues that, because Plaintiff used the JCPenney rewards program and obtained rewards credit points for the jewelry purchase, her claims are likewise subject to arbitration under the terms and conditions of the rewards program agreement.

Plaintiff argues she never agreed to arbitrate any of the claims she presently asserts against Defendant, and the arbitration provisions Defendant relies upon in its motion do not apply to her claims in this case. She also argues that the 2008 credit card agreement Defendant relies upon has been superseded by later versions containing materially different provisions regarding arbitration.

---

1257480, at *1 (D. Kan. Apr. 4, 2011) (noting "district courts that have considered the nature of an order to stay proceedings pending arbitration and to compel arbitration have concluded that these are non-dispositive orders"); *Jackman v. Jackman*, No. 06-1329-MLB-DWB, 2006 WL 3792109, at *2 (D. Kan. Dec. 21, 2006) ("[B]ecause an Article III judge will ultimately be required to confirm, modify, or vacate any arbitration award, the order to stay proceedings and compel arbitration is non-dispositive and is within the magistrate [judge]'s authority."). *But see Walter v. Mark Travel Corp.,* No. 09-1019-EFM, 2013 WL 5276143, at *4 (D. Kan. Sept. 18, 2013) (noting the law in the Tenth Circuit is not settled whether an order compelling arbitration is non-dispositive or dispositive).

## II.    Law Regarding Arbitration Provisions

The Federal Arbitration Act ("FAA")[4] provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[5] The FAA permits courts to stay litigation in favor of arbitration and to compel arbitration.[6] Under section 4 of the FAA, a party aggrieved by the alleged failure or refusal of another party to arbitrate may move for an order compelling arbitration.[7]  Before entering orders directing parties to proceed to arbitration, courts must be "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."[8] The United States Supreme Court has interpreted these provisions to manifest a "liberal federal policy favoring arbitration agreements."[9]

But despite this liberal policy, the presumption of arbitrability "falls away," when the parties dispute whether a valid and enforceable arbitration agreement exists.[10] "[A]rbitration is a matter of contract," and parties cannot be required to submit to arbitration any dispute which they

---

[4] 9 U.S.C. § 1 et seq.

[5] 9 U.S.C. § 2.

[6] *See* 9 U.S.C. §§ 3 and 4.

[7] 9 U.S.C. § 4.

[8] 9 U.S.C. § 4. See also *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (A court may compel arbitration "only when satisfied that the making of the agreement [to arbitrate] is not at issue.").

[9] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[10] *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).

have not agreed so to submit.[11] Nor does the FAA prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement.[12] Courts are required to simply enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.[13] When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally "should apply ordinary state-law principles that govern the formation of contracts."[14]

When there is a dispute between the parties regarding whether an arbitration agreement exists, the party moving to compel arbitration bears a burden similar to the one a summary judgment movant faces—it must make an initial showing that a valid arbitration agreement exists.[15] In other words, the party seeking to compel arbitration has the burden to "present evidence sufficient to demonstrate an enforceable agreement to arbitrate."[16]

---

[11] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). *See also Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) ( "Everyone knows the Federal Arbitration Act favors arbitration. But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated.")(citing *AT & T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011)).

[12] *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

[13] *Id.* (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) (the FAA was designed "to make arbitration agreements as enforceable as other contracts, but not more so.")).

[14] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

[15] *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012).

[16] *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1263 (D. Kan. 2003).

III.    **Arbitration Provisions at Issue**

A.    **Arbitration Provisions in Plaintiff's JCPenney Credit Card Agreement**

1.    **The 2008 Agreement**

In its motion to compel arbitration, and memorandum in support, Defendant relied upon arbitration provisions contained in the 2006 credit card agreement[17] and subsequent 2008 notice of change in terms,[18] which were mailed to Plaintiff when she opened her JCPenney credit card account with GE Money Bank in February 2007 and with her April 28, 2008 billing statement (hereinafter collectively, the "2008 Agreement"). Defendant attached the April 20, 2017 Declaration of Martha Koehler, Manager of Litigation Support for Synchrony Bank,[19] to support its assertion that Plaintiff's JCPenney credit card agreement included a "broad agreement" to arbitrate her claims. The 2008 Agreement contains the following arbitration provision:

> ANY PAST, PRESENT, OR FUTURE LEGAL DISPUTE OR CLAIM OF ANY KIND, INCLUDING STATUTORY AND COMMON LAW CLAIMS AND CLAIMS FOR EQUITABLE RELIEF, THAT RELATES IN ANY WAY TO YOUR ACCOUNT, CARD OR THE RELATIONSHIPS THAT ARISE FROM YOUR ACCOUNT, THIS AGREEMENT OR ANY PRIOR AGREEMENT OR ACCOUNT, INCLUDING THE ENFORCEABILITY OR SCOPE OF THIS PROVISION OR DISPUTES OR CLAIMS THAT AROSE BEFORE THIS PROVISION'S EFFECTIVE DATE, ("CLAIM") WILL BE RESOLVED BY BINDING ARBITRATION IF YOU, WE OR JCPENNEY ELECTS TO

---

[17] THE JCPENNEY CARD, CREDIT CARD AGREEMENT, RETAIL INSTALLMENT CREDIT AGREEMENT, Nonnegotiable Consumer Note (July 2006), ECF No. 32-1 at 7–8.

[18] IMPORTANT NOTICE REGARDING JCPENNEY CREDIT CARD ACCOUNT, GE MONEY BANK (April 2008), ECF No. 32-1 at 10-11.

[19] Synchrony Bank is a federal savings association that has a number of credit card programs, including a JCPenney-branded credit card program. Synchrony Bank was formerly known as GE Money Bank before 2011, and GE Capital Retail from October 1, 2011 until June 2, 2014. Koehler's Declaration states she is familiar with the manner in which credit card agreements are maintained and the manner in which mailings are sent to Synchrony Bank cardholders, and she addresses specifically the opening and history of Plaintiff's JCPenney credit card account. Koehler Decl., ECF No. 32. Future references to Synchrony Bank herein will include the GE predecessor entities.

ARBITRATE.

\*\*\*

As used in this [arbitration] provision: "We," "Us," and "Our" mean (1) GE Money Bank and all of its parents, subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors (collectively, the "Bank"), and (2) J. C. Penney Corporation, Inc. and all of its parents, subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors.[20]

Koehler indicated in her Declaration that subsequent notices of change in terms were enclosed with Plaintiff's October 28, 2008 and September 28, 2009 billing statements, but those changes did not relate to arbitration. Koehler's Declaration was silent on whether additional subsequent change in terms notices were enclosed in any of Plaintiff's billing statements after September 28, 2009.

Relying on the 2008 Agreement language, Defendant argued in its memorandum in support of its motion that the parties agreed to "arbitrate any dispute or claim relating to [Plaintiff's] account, or the relationships that arise from the use of that account."[21] Defendant argued the basis for Plaintiff's claims is a dispute over a charge on her JCPenney credit card account, and necessarily involves Plaintiff's account and relationship with JCPenney arising from use of that account. In short, Defendant argued but for Plaintiff's $171.66 charge on her JCPenney credit card account and obligation to pay that charge, Plaintiff suffered no injury and could not state a claim against Defendant.

## 2.    The 2016 Agreement

Plaintiff disputes that the 2008 Agreement is the applicable version of the credit card agreement that would govern a dispute relating to Plaintiff's JCPenney credit card account.

---

[20] 2008 Agreement, ECF No. 32-1 (the first paragraph quoted above appeared in the 2008 Agreement in all caps, as is reflected here).

[21] ECF No. 32, at 4 (citing Koehler Decl. ¶ 20).

Plaintiff argues Defendant "declined to present to the Court the most recent and controlling versions of the two arbitration clauses," and attempts to "enforce an outdated, 10-year old version of the Synchrony Bank arbitration clause."[22] Plaintiff attached to her response a September 2016 version of Synchrony Bank's JCPenney Credit Card Agreement (the "2016 Agreement"), which Plaintiff's counsel obtained from Synchrony Bank's website.[23] Plaintiff argues this 2016 Agreement made at least three significant changes subsequent to the 2008 Agreement that Defendant presented to the Court. With regard to the scope of the arbitration provision, Plaintiff points out that significant language upon which Defendant relied from the 2008 Agreement no longer exists in the 2016 Agreement. Specifically, Plaintiff argues language in the 2008 Agreement mandating arbitration of legal claims and disputes regarding "relationships that arise from the use of the [JCPenney credit card]" has been removed from the 2016 Agreement. Plaintiff argues the scope of the controlling credit card agreement has been significantly narrowed and the omission of this language reveals a clear intent of Plaintiff and Synchrony Bank not to arbitrate anything other than credit card account disputes. Plaintiff maintains her claims are based on Defendant's false advertising practices and exist regardless of whether Plaintiff paid for her purchase with cash or her JCPenney credit card.

In its reply, Defendant argued that Plaintiff did not contest she agreed to the binding arbitration provisions in the 2008 Agreement, and that Plaintiff has provided no evidence she received the 2016 Agreement, or that the 2016 Agreement applies to the claims in this case.

---

[22] Pl.'s Mem. in Opp'n at 3–4, ECF No. 41.

[23] SYNCHRONY BANK JCPENNEY CREDIT CARD AGREEMENT (Sept. 2016), ECF No. 41-1 at 4–7. Plaintiff also identified and attached a March 2017 version of Synchrony Bank's JCPenney credit card agreement that her counsel obtained from Synchrony Bank's website. See ECF No. 41-1 at 9–16. The 2017 version is identical to the 2016 Agreement in all material respects, therefore throughout this Memorandum and Order the Court will refer simply to the 2016 Agreement.

Defendant asserted it had "offered unrefuted testimony establishing that the agreements attached to its motion [i.e., the 2006 and 2008 Agreements] are the agreements that were sent to Plaintiff and govern the relationship at issue."[24] Defendant noted that Plaintiff was given two opportunities to opt out of arbitration but did not do so.[25] Defendant argued even if the 2016 Agreement identified by Plaintiff governs the relationship between Plaintiff and Defendant, that would not change the outcome—Plaintiff would still be required to arbitrate her claims. Defendant contended this is so because every agreement in the record includes a binding arbitration provision and all of those agreements give Defendant express arbitration rights. Defendant characterized the differences in these agreements as "slight." Defendant stressed the provisions of the 2016 Agreement include the language in bold capitalized letters alerting Plaintiff that most disputes will be subject to individual arbitration and the limited exceptions to which arbitration will not apply (neither of which are applicable to Plaintiff's claims here). Finally, Defendant argued at most the 2016 Agreement revisions would mean only that there was silence as to class arbitration with regard to Defendant; they would not mean the arbitration provision is to be ignored altogether.

On June 21, 2017, after consulting with the parties' counsel regarding availability, the Court entered a Notice of Hearing setting an evidentiary hearing on Defendant's motion on July 6, 2017. The Court specifically indicated what issue the parties should address at the hearing:

> The purpose of the hearing will be to hear testimony from Martha Koehler re the business records of Synchrony Bank (as broadly defined in Ms. Koehler's 4/20/2017 Affidavit) regarding Plaintiff's JCPenney credit card. Specifically, the Court will hear testimony concerning whether any Change in Terms notices and/or amended credit card agreements were sent to Plaintiff other than those referenced

---

[24] ECF No. 42 at 4.

[25] *Id.* Plaintiff does not contest this point and the Court need not address it.

in the 4/20/2017 Affidavit.[26]

The Court set the July 6 hearing because Koehler's Declaration, although identifying the 2008 Agreement, failed to indicate whether Koehler had thoroughly searched Synchrony Bank's records to determine if subsequent notices regarding changes to her credit card terms were sent to Plaintiff between 2009 and 2014, and whether the 2008 Agreement was the last (and most recent) sent to Plaintiff at the time she purchased the jewelry in September 2014. This, along with Plaintiff's identification of the 2016 Agreement, which included materially different arbitration provisions, and the failure of Defendant to verify in its reply the most recent applicable version of Plaintiff's JCPenney credit card agreement, put this issue squarely in play.

### 3.    The 2012 Agreement

On June 30, 2017, Defendant filed a Notice with the Supplemental Declaration of Koehler, dated June 29, 2017, attached.[27]  Koehler states in her Supplemental Declaration that out of an abundance of caution and in preparation for the July 6, 2017 hearing, she reconfirmed her findings with Synchrony Bank's marketing, IT, and compliance groups in order to confirm that no additional change in terms notices were sent to Plaintiff. Through that process, Kohler identified two additional change in terms notices that were sent to Plaintiff after 2009. In 2012, due to a "unique circumstance," GE Capital Retail Bank (Synchrony Bank's predecessor) sent a "global" change in terms to all eligible accounts, including Plaintiff. This "global" change included sending the entire card holder agreement incorporating the applicable change in terms to the eligible

---

[26] June 21, 2017 Notice of Hearing, ECF No. 43.

[27] Notice of Koehler Suppl. Decl., ECF 45.

account holder (the "2012 Agreement").[28] Another change in terms notice was sent to Plaintiff in October 2015, but it did not alter the arbitration provisions of the 2012 Agreement. Koehler also indicates that the 2016 Agreement obtained by Plaintiff's counsel from Synchrony Bank's website does not relate to Plaintiff's JCPenney credit card account and was not provided to Plaintiff.

The 2012 Agreement contains the following provisions regarding arbitration:

**RESOLVING A DISPUTE WITH ARBITRATION**

**PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**

- **What claims are subject to arbitration**

1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or J. C. Penney Corporation, Inc. if it relates to your account, except as noted below.

2. We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.

3. Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof (including, without limitation, the next paragraph of this section and/or this sentence). However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.[29]

---

[28] GE CAPITAL RETAIL BANK, JCPENNEY CREDIT CARD ACCOUNT AGREEMENT, ECF No. 45-1 at 5–10.

[29] 2012 Agreement, ECF No. 45-1 at 10.

Defendant finally concedes in its Notice of Koehler's Supplemental Declaration that the 2012 Agreement includes an "updated" arbitration provision "similar" to the 2016 Agreement identified by Plaintiff in her response.[30] Thus, it now appears undisputed that the 2012 Agreement is applicable and governs the claims at issue in this case, and the Court so finds. Based upon its review and comparison of the 2012 Agreement with the 2016 Agreement, the Court further finds that the two agreements are not merely similar, rather they are identical in all respects relevant and material to the dispute in this case.[31]

### 4.    The Court Must Decide Whether the Parties Agreed to Arbitrate

Before addressing the specific arbitrability of the claims raised in this case, the Court must address the threshold issue of who decides arbitrability in the first place—the Court or an arbitrator.[32] "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."[33] Here, the 2012 Agreement expressly provides that "only a court, not an arbitrator, will decide disputes about

[30] In its motion to stay this case and compel arbitration, and memorandum in support, Defendant relied upon the 2008 Agreement. According to Koehler's Supplemental Declaration, she only went back to review Defendant's records for any more recent change in terms or agreements applicable to Plaintiff's account, in preparation for the court hearing scheduled for July 6, 2017. Even after Plaintiff attached the 2016 and 2017 Synchrony Bank Agreements to its response and asserted there were more recent versions of Plaintiff's agreement than the 2008 Agreement, Defendant persisted in its position that the 2008 Agreement governed Plaintiff's claims (*See* Reply, ECF No. 42 at 4). Defendant claimed it had "offered unrefuted testimony establishing that the agreements attached to its motion [i.e. the 2006 and 2008 Agreements] are the agreements that were sent to Plaintiff and govern the relationship at issue." However, Defendant now concedes that the 2012 Agreement governs Plaintiff's claims. Had the Court not set the July 6 hearing and pressed the issue, it does not appear that Defendant would have ever performed the necessary due diligence and come forward to correct the record. This is not the level of due diligence, professionalism and candor expected of litigants and counsel who appear in this Court.

[31] *Compare* 2012 Agreement (ECF No. 45-1 at 10) with 2016 Agreement (ECF No. 41-1 at 6).

[32] *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017).

[33] *James v. Client Servs., Inc.*, No. 14-2480-JAR, 2015 WL 3649473, at *2 (D. Kan. June 11, 2015) (quoting *AT & T Techs.,* 475 U.S. at 649).

the validity, enforceability, coverage or scope of this section or any part thereof." Based upon this language, the Court finds that it, rather than an arbitrator, must decide the issue of whether Plaintiff agreed to arbitrate the claims asserted against Defendant in this case.

     **5.**     **Under the Applicable 2012 Agreement, Plaintiff's Claims are Not Subject to Arbitration**

The provision for "Resolving a Dispute with Arbitration" in the 2012 Agreement is significantly narrower than the "Arbitration Provision" in the 2008 Agreement, upon which Defendant relied in its motion.[34] The "Arbitration Provision" in the 2008 Agreement that required arbitration of "any past, present or future legal dispute or claim of any kind, including statutory and common law claims . . . that relates in any way to your account, card or the relationships that arise from your account, this agreement or any prior agreement or account"[35] was removed from the 2012 Agreement. In lieu of this broad arbitration scope provision, the 2012 Agreement provides that the only dispute or claim subject to arbitration is one between Plaintiff and Synchrony Bank, its affiliates, agents and/or J. C. Penney Corporation, Inc. "if it *relates to your account*, except as noted below."[36]

The Court rejects Defendant's assertion that these are "slight" changes. It is significant that the 2012 Agreement deleted the express reference to "statutory" claims from those subject to arbitration, especially in this case involving Plaintiff's claim that Defendant violated *statutory* provisions of the KCPA. It is also significant that the 2012 Agreement limits the claims subject to

---

[34] *Compare* 2012 Agreement (ECF No. 45-1 at 10) with 2008 Agreement (ECF No. 32-1 at 10).

[35] 2008 Agreement, ECF No. 32-1 at 10.

[36] 2012 Agreement, ECF No. 45-1 at 10 (emphasis added). The two noted exceptions for small claims or collection cases do not apply here.

arbitration to any dispute or claim related to Plaintiff's JCPenney credit card account, to the exclusion of claims subject to arbitration under the 2008 arbitration provision also relating to Plaintiff's card or *the relationships that arise from the account*. The omission of this latter provision is especially significant in that it materially changed the scope of the arbitration provision and clearly indicates an intent to do so. Notably, Defendant relied upon this language of the 2008 Agreement arbitration provision in support of its motion to compel arbitration, but this provision was omitted and superseded by the 2012 Agreement. And in its reply, although it made arguments that it is entitled to arbitrate even if the 2016 Agreement (and hence the identified 2012 Agreement language) applies, Defendant did not address the effect of the deletion of this material language upon which it had previously relied.

The Court finds that the terms of the 2012 Agreement superseded the arbitration provisions of the 2008 Agreement. The Court also finds the arbitration provisions in the 2012 Agreement are limited in scope to disputes and claims related to Plaintiff's JCPenney credit card account with Synchrony Bank (formerly GE Capital Retail Bank). Plaintiff's statutory claims under the KCPA against Defendant for deceptive and unconscionable acts and practices relate to Defendant's allegedly false or fraudulent advertising and pricing of items it sells to consumers. Plaintiff does not seek to hold Defendant liable for false or deceptive advertising *with respect to her credit card account* or any violation or interference with any term or provision *of her credit card account*. The Court therefore finds that Defendant has not met its burden to show that the arbitration provisions in the 2012 Agreement require arbitration of Plaintiff's claims against Defendant.

Nor has Defendant shown that it has a right to make a demand for arbitration under the 2012 Agreement. Defendant is not a signatory party to either the 2008 Agreement or 2012

Agreement. Both agreements are between Plaintiff and Synchrony Bank or its predecessor entities GE Money Bank or GE Capital Retail, the company that extended credit to Plaintiff by issuing her a JCPenney-branded credit card. The 2012 Agreement expressly provides it "is an Agreement between you and GE Capital Retail Bank, [address], for your credit card account shown above."[37] In its provision for what claims are subject to arbitration, it specifically states that "[i]f either *you* or *we* make a demand for arbitration, *you* and *we* must arbitrate . . . ."[38]   The 2012 Agreement defines "you" as the accountholder and "we" as "GE Capital Retail Bank."[39]  Because Defendant is not included within "we," it does not have a contractual right under the 2012 Agreement to make a demand for arbitration. The Court recognizes that in some cases a nonsignatory party to an arbitration agreement may enforce the agreement if it is a third-party beneficiary.[40]  The Court need not decide whether Defendant is a third-party beneficiary because the Court has already found that Plaintiff's claims in this case do not fall within the scope of the claims required to be resolved by arbitration under the 2012 Agreement.

### B.    Arbitration Provision in JCPenney Rewards Agreement

Defendant alternatively seeks to compel arbitration of Plaintiff's claims as a condition of her participation and membership in the J.C. Penney rewards program. Defendant claims Plaintiff utilized her rewards account for the transaction and received 158 reward points credit for the transaction under the J.C. Penney rewards program, which she later redeemed in subsequent

---

[37] 2012 Agreement, ECF No. 45-1 at 10.

[38] *Id.* (emphasis added).

[39] *Id.*

[40] *O'Connor v. R.F. Lafferty & Co.,* 965 F.2d 893, 901 (10th Cir. 1992).

transactions. Defendant argues Plaintiff's lawsuit broadly challenges Defendant's product discounts and incentives as allegedly fraudulent and deceptive, and therefore necessarily implicates the discounts and incentives Plaintiff received, including the rewards incentives and credits she received, for the transaction at issue.

Plaintiff argues that the rewards program arbitration provision does not apply to her claims alleging Defendant's pricing and discounts are deceptive and fraudulent, because they do not arise from or relate to the rewards program agreement or her rewards. Plaintiff contends that she did not use her JCP Rewards benefits to purchase the earrings, nor was her ability to purchase the earrings conditioned on her membership in the rewards program. Plaintiff did not receive a discount on her purchase for being a rewards member and she is not claiming she was given insufficient rewards "points" for her purchase. Therefore, Plaintiff argues there is no connection between her membership or the terms and conditions of the rewards program and Plaintiff's claims against Defendant for its advertising practices.

The JCPenney Rewards Program Terms and Conditions (effective September 1, 2014) include the following arbitration provision:

> This Agreement will be governed by and construed under the substantive laws of the State of Texas, without reference to conflict-of-laws considerations. JCPenney and Member each agree that any dispute, claim, or controversy ("Claim") arising from or relating to this Agreement or Member's JCPenney Rewards Membership will be resolved by binding arbitration conducted in the State of Texas (Collin County).[41]

The Rewards Program Terms and Conditions provide that the agreement is governed and construed under the law of the State of Texas, therefore Texas law guides the Court's inquiry whether Plaintiff's claims fall within the scope of the arbitration agreement. In determining

---

[41] JCPenney Rewards Program Terms and Conditions §VII, ECF No. 32-2.

15

whether a party's claims fall within an arbitration agreement's scope, the Court focuses on the complaint's factual allegations rather than the legal causes of action asserted.[42] Any doubts about the scope of the arbitration agreement are to be resolved in favor of coverage.[43]

Reviewing the factual allegations of Plaintiff's petition, the Court finds no mention of Defendant's rewards agreement, program, or Plaintiff's membership in the rewards program. Plaintiff includes detailed allegations about her purchase of the earrings and Defendant's advertised discounts and pricing with respect to the earrings,[44] but Plaintiff makes no allegations regarding the rewards program. As Plaintiff contends, her claims are based upon Defendant's allegedly deceptive and fraudulent pricing and discounts, not upon breach of the terms of the rewards program or upon Plaintiff's membership in the program. The Court therefore finds that Plaintiff's claims alleging Defendant "falsely advertised former prices and discounts" do not arise from or relate to the rewards membership agreement or the rewards membership. Thus, Plaintiff's claims are not within the scope of the rewards program arbitration provision.

**IT IS THEREFORE ORDERED THAT** Defendant's Motion to Stay Proceedings and Compel Arbitration (ECF No. 31) is DENIED.

**IT IS SO ORDERED**.

Dated July 14, 2017, at Kansas City, Kansas.

_Teresa J. James_
Teresa J. James
U. S. Magistrate Judge

---

[42] *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 754 (Tex. 2001).

[43] *Id.*

[44] Pl.'s Class Action Pet. for Damages ¶¶ 30–46, ECF No. 1-1.