# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ANN CAVLOVIC,

    Plaintiff,

v.

J.C. PENNEY CORPORATION, INC.,

    Defendant.

Case No. 17-2042-JAR-TJJ

## MEMORANDUM AND ORDER

This case is before the Court on Defendant J.C. Penney Corporation, Inc.'s ("J.C. Penney") Motion for Review of Magistrate Judge's Order under FRCP 72(a) (Doc. 48). The motion is fully briefed and the Court is prepared to rule. As described more fully below, the Court denies Defendant's motion for review.

**A.    Background**

On September 23, 2014, Plaintiff Ann Cavlovic used her J.C. Penney credit card to purchase a pair of earrings from a J.C. Penney store in Kansas. She alleges that J.C. Penney offered two stackable discounts that brought the purchase price down from an advertised sticker price of $524.98 to $171.66 (after tax and discounts). Plaintiff received additional purchase incentives in the form of 158 J.C. Penney Rewards points, which she later redeemed. When she arrived home, Plaintiff discovered a price tag in the box of earrings for $225, which had been crossed out. Plaintiff alleges that J.C. Penney's advertisements about original and sale prices are fraudulent and deceptive. The Complaint asserts Kansas state law claims for violations of the Kansas Consumer Protection Act ("KCPA"), and unjust enrichment.

On April 21, 2017, Defendant asked this Court to compel individual, non-class arbitration, and stay any further proceedings in this case, based on arbitration provisions in two

separate agreements, one governing the J.C. Penney credit card that she used in the transaction at issue, and the other governing the rewards program under which she received points in the transaction. In its briefing, Defendant argued that the controlling arbitration provision was contained in Plaintiff's 2006 credit card agreement, as amended by a 2008 notice of change of terms sent to Plaintiff along with her April 28, 2008 billing statement ("2008 Agreement"). The 2008 Agreement contained a broad agreement to arbitrate, including "any past, present, or future legal dispute or claim of any kind, including statutory and common law claims and claims for equitable relief, that relates in any way to your account, card or the relationships that arise from your account, this agreement or any prior agreement or account."[1] Defendant submitted this 2008 Agreement along with an affidavit from Martha Koehler, the Manager of Litigation Support for Synchrony Bank, which provided the credit card program at issue in this case. Ms. Koehler reviewed the Bank's business records and attested that changes in terms were mailed along with Plaintiff's monthly billing statement on October 28, 2008, and September 28, 2009.[2]

Plaintiff responded to the motion to compel by arguing that the 2008 Agreement did not control, and pointed to 2016 and 2017 versions of J.C. Penney credit card agreements her counsel had found on the Internet. Plaintiff argued that these agreements govern the dispute and contain arbitration clauses that are narrower in scope, and thus do not apply to Plaintiff's claims.

This Court referred the motion to Magistrate Judge Teresa J. James for disposition. After the reply was filed, in which Defendant continued to argue that the 2008 Agreement governs the arbitrability question, Judge James issued a notice of evidentiary hearing. The notice provided:

> The purpose of the hearing will be to hear testimony from Martha Koehler re the business records of Synchrony Bank (as broadly defined in Ms. Koehler's 4/20/2017 Affidavit) regarding Plaintiff's

---

[1] Doc. 32-1.

[2] *Id.* The 2009 change did not relate to arbitration.

> JCPenney credit card. Specifically, the Court will hear testimony concerning whether any Change in Terms notices and/or amended credit card agreements were sent to Plaintiff other than those referenced in the 4/20/2017 Affidavit.[3]

On June 30, 2017, Defendant filed a Notice with the Supplemental Declaration of Koehler.[4] She attested that in preparing for the evidentiary hearing, she consulted with the technology and compliance groups at the Bank to ensure that no other changes in terms had been mailed to Plaintiff. She explained that typically, changes in terms are sent along with the customer's billing statement, and that as a result, if a customer did not carry a balance, the change in terms would not be sent until the next time the customer received a billing statement. But Ms. Koehler learned that in 2012, the Bank deviated from this practice, and instead sent a separate direct mailing to all J.C. Penney customers whose accounts carried no balance but were eligible to receive a change in terms, including Plaintiff's account.[5] Ms. Koehler attests that the 2016 and 2017 agreements submitted by Plaintiff were not provided to Plaintiff because they only applied to new J.C. Penney credit accounts opened in 2016 or 2017.

On July 14, 2017, Judge James ruled on the motion to compel arbitration. She concluded that the 2012 Agreement governed the dispute. She further found that the 2012 Agreement was identical in all relevant respects to the 2016 Agreement discussed by Plaintiff in the response. She concluded that under the 2012 Agreement, Plaintiff's claims are not subject to arbitration because: (1) Defendant failed to meet its burden to demonstrate that the arbitration provision in the 2012 Agreement required Plaintiff to arbitrate the claims in this case; (2) Defendant has not demonstrated it has a right to make a demand for arbitration under the 2012 Agreement; and (3)

---

[3] Doc. 43.
[4] Doc. 45.
[5] Ms. Koehler also located a 2015 change in terms that applied to Plaintiff's account, but that did not relate to arbitration.

3

Plaintiff's claims do not fall within the scope of Plaintiff's Rewards Program Terms and Conditions.

**B.    Discussion**

On July 25, 2017, Defendant filed the instant motion for review of Judge James' decision, and asked the undersigned to expedite this review in order to preserve its right to appeal her order to the extent it requires an Order on review. The Court granted this request and expedited briefing.

Fed. R. Civ. P. 72 allows a party to provide specific, written objections to a magistrate judge's order. With respect to a magistrate judge's order relating to nondispositive pretrial matters, the district court does not conduct a *de novo* review; rather, the court applies a more deferential standard by which the moving party must show that the magistrate judge's order is "clearly erroneous or contrary to the law."[6] "The clearly erroneous standard 'requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"[7] To the extent Defendant raises new arguments in the motion for review that were not articulated in the briefing before Judge James, they are waived.[8]

Defendant's points of error regarding the 2012 Agreement in the motion for review are new. Defendant did not produce, much less acknowledge as controlling, the 2012 Agreement until after the briefing closed on the motion to compel arbitration. In fact, the only reason the 2012 Agreement came to light was because Judge James ordered an evidentiary hearing to

---

[6]28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

[7]*U.S. Fire Ins. Co. v. Bunge N.A., Inc.*, 244 F.R.D. 638, 641 (D. Kan. 2007) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)).

[8]*ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1184–85 (10th Cir. 2011); *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996); *see also Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 494 n.3 (D. Kan. 1997).

determine whether Defendant or the Bank sent any other agreements to Plaintiff. In its Notice of Supplemental Declaration, filed after Judge James ordered that evidentiary hearing, Defendant did not take the position that the 2012 Agreement was controlling. Instead, Defendant stated "these revisions do not change the substantive analysis on the arbitrability of Ms. Cavlovic's claims."[9] While the failure to locate this agreement prior to filing its motion to compel arbitration may have been an oversight due to the "unique circumstance" of the 2012 changes in terms,[10] Defendant has waived the ability to raise new arguments about the appropriate interpretation of the 2012 Agreement in this motion for review, which is limited to reviewing Judge James' decision based on the evidence and arguments before her at the time of her decision. Defendant could have performed its due diligence before, rather than after, it filed the motion to compel arbitration to determine the correct terms that apply to this dispute.

In the reply brief on the motion to compel arbitration, Defendant argued that even if the 2016 Agreement governed this dispute, it evidences "a broad intent to arbitrate 'any dispute or claim'" between the parties, just like the 2008 Agreement. It maintained any differences between the 2008 and 2016 Agreements were only slight, and therefore the result was the same. Judge James considered and rejected this argument. In doing so, she was obviously required to compare the two versions of the arbitration provision. Judge James determined that the 2012 Agreement was "more limited in scope to disputes and claims related to Plaintiff's JCPenney credit card account."[11] For one, the 2012 Agreement removed the express reference to "statutory" claims from those that would be subject to arbitration. Also, the 2012 Agreement limits the scope of applicable claims to "any dispute or claim related to Plaintiff's JC Penney

---

[9]Doc. 45 ¶ 5.

[10]According to Ms. Koehler's affidavit, this unique circumstance was a "global" change, sent by direct mailing to all similarly-situated cardholders.

[11]Doc. 47 at 13.

5

credit card account, to the exclusion of claims subject to arbitration under the 2008 arbitration provision also relating to Plaintiff's card or *the relationships that arise from the account*."[12] Judge James found it notable that Defendant relied on the italicized language in the 2008 Agreement in support of its motion to compel arbitration, yet this language was omitted from the 2012 Agreement.

Judge James' finding's about the differences between the two agreements was not clearly erroneous. First, Defendant invited this comparison by arguing that the differences between the two agreements were slight. Second, Defendant takes the parol evidence rule too far. It is true that under Utah law,[13] if the contract is integrated, parol evidence is only admissible to clarify ambiguous terms.[14] Parol evidence is defined as "evidence of contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of an *integrated* contract."[15] The 2008 Agreement is not a contemporaneous statement or representation being offered to change, or add to the terms of the 2012 Agreement. In fact, Judge James explicitly found that the 2012 Agreement superseded the 2008 Agreement. Instead, Judge James examined the differences between the two agreements to aid in interpreting the latter.[16] This was not clear error or contrary to law.

Moreover, Judge James' decision that Plaintiff's claims do not fall within the scope of the 2012 Agreement is not clearly erroneous. Defendant continues to maintain that the arbitration

---

[12]*Id.* (emphasis in original).

[13]The choice-of-law provision in this Agreement provides for Utah law to govern the dispute.

[14]*Tangren Fam. Tr. v. Tangren*, 182 P.3d 326, 330 (Utah 2008).

[15]*Id.* (quoting *Hall v. Process Instruments & Control, Inc.*, 890 P.2d 1024, 1026 (Utah 1995) (emphasis in original)).

[16]*See* Restatement (Second) of Contracts § 215(a) ("A binding integrated agreement discharges inconsistent prior agreements, and evidence of a prior agreement is therefore irrelevant to the rights of the parties when offered to contradict a term of the writing. . . . [T]he evidence may nevertheless be relevant to a question of interpretation, to a question of invalidating cause, or to a question of remedy. See § 214. But the earlier agreement, no matter how clear, cannot override a later agreement which supersedes or amends it.").

clause at issue is broad, and thus "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."[17] Judge James concluded that the 2012 arbitration clause, particularly when compared to the 2008 clause, was not broad. First, the scope of claims no longer contains an "including" reference to statutory claims, or other specific types of claims, such as those advanced by Plaintiff under the KCPA. And second, the 2012 Agreement is restricted to any claim "if it relates to your account,"[18] as compared to the 2008 Agreement that states it applies to any claim that "relates in any way to your account, card or the relationships that arise from your account."[19] It was not clearly erroneous to conclude that the claims at issue in this case did not relate to Plaintiff's credit account. As Judge James concluded, Plaintiff's claims relate to false and deceptive advertising practices and the pricing of its merchandise. She does not allege claims concerning any of J.C. Penney's practices with regard to her credit account. These findings are not clearly erroneous or contrary to law. Defendant's new argument about the appropriate interpretation of the term "relate" could have been but was not raised before Judge James, and thus has been waived.[20]

Finally, Defendant asks this Court to review Judge James' determination that it is not entitled to compel arbitration under the Rewards Agreement, governed by Texas law pursuant to a choice-of-law provision. That arbitration provision governs "any dispute, claim, or controversy ("Claim") arising from or relating to this Agreement or Member's JCPenney

---

[17]*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf*, 363 U.S. 574, 584–85 (1960)).

[18]Doc. 45-1 at 10. The 2012 Arbitration Agreement provides two explicit exceptions to arbitration: "(1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us."

[19]Doc. 32-1 at 7.

[20]Because the Court finds no clear error in Judge James' determination that Plaintiff's claims fall outside the scope of the governing arbitration clause, it need not review her determination that Defendant lacks standing to demand arbitration under the 2012 Agreement. And she did not reach the question of whether J.C. Penney was a third-party beneficiary.

Rewards Membership."[21]  Judge James determined that Plaintiff's claims are not based on the terms of the rewards program, or contingent upon her membership in the program.  The only nexus between Plaintiff's claims and the rewards program is that Plaintiff incurred rewards for her purchase of the earrings.  It was not clearly erroneous for Judge James to determine that Plaintiff's claims were outside the scope of the agreement.  And Defendant's new arguments about the meaning of "relate to" under Texas law have been waived.  They could have been, but were not presented to Judge James in the first instance.

The Court is not left with the definite and firm conviction that a mistake has been committed as to Judge James' Memorandum and Order denying the motion to compel arbitration.  Thus, Defendant's motion for review under Rule 72(a) must be denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Review of Magistrate Judge's Order under FRCP 72(a) (Doc. 48) is **denied**.

**IT IS SO ORDERED.**

Dated: August 8, 2017

                                              S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              UNITED STATES DISTRICT JUDGE

---

[21] Doc. 32-2.