IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANN CAVLOVIC,
individually and on behalf of those similarly situated,

        Plaintiff,

v.

J.C. PENNEY CORPORATION, INC.,

        Defendant.

Case No. 2:17-cv-2042-JAR-TJJ

## MEMORANDUM AND ORDER

Plaintiff Ann Cavlovic filed this class-action suit against Defendant J.C. Penney Corporation, Inc. ("J.C. Penney") on December 19, 2016, in the District Court of Wyandotte County, Kansas, alleging J.C. Penney fraudulently advertised fake former prices and discounts to create illusory sales. J.C. Penney then removed to this Court under the Class Action Fairness Act of 2005 ("CAFA").[1] Ms. Cavlovic asserts three claims for relief: (1) damages under the Kansas Consumer Protection Act ("KCPA"); (2) injunctive relief under the KCPA; and (3) unjust enrichment.[2] Before the Court is J.C. Penney's Motion to Dismiss (Doc. 17), in which J.C. Penney argues that Ms. Cavlovic has not alleged plausible fraud claims because she failed to meet her pleading burdens under Fed. R. Civ. P. 8(a) and Fed. R. Civ. P. 9(b).[3] The matter is

---

[1] Doc. 1 at 1.

[2] Doc. 1-1 at 16–20.

[3] J.C. Penney moved to dismiss the Complaint in its entirety. However, the motion refers only to the fraud claims. J.C. Penney does not address the unjust enrichment claim, which does not fall under 9(b), other than asserting that because Ms. Cavlovic did not meet her burden of pleading that the price was false or misleading, she cannot meet her burden of pleading that it was "inequitable" for J.C. Penney to retain the money she paid (Doc. 35 at 5, n. 3). Accordingly, the Court limits its discussion of J.C. Penney's motion to the fraud claims.

fully briefed and the Court is prepared to rule. For the reasons stated below, the Court denies J.C. Penney's motion to dismiss.

## I. Legal Standards

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[4] "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[5] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[6] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[7] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[8]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[9] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth,

---

[4]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[5]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[6]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[8]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[9]*Id.*

2

or merely legal conclusions that are not entitled to an assumption of truth.[10]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[11]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]

### B. Rule 9(b) Standard

Under Fed. R. Civ. P. 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  This rule is applicable to allegations of deceptive trade practices under the KCPA.[13]  Therefore, to survive a motion to dismiss, a complaint asserting deceptive practices under the KCPA "must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[14]

## II. Factual Allegations

The following factual allegations are drawn from Ms. Cavlovic's Complaint and are assumed true for purposes of this ruling.  The Complaint alleges that beginning in 2011, J.C. Penney artificially inflated prices, specifically on its private-branded and exclusive-branded apparel and accessories, then deceived customers with what appeared to be steep discounts.  As explained below, J.C. Penney briefly ceased the "fake sales scheme" in 2012, but resumed this

---

[10]*Id.* at 679.

[11]*Id.*

[12]*Id.* at 678.

[13]*Thompson v. Jiffy Lube Int'l Inc.*, 505 F. Supp. 2d 907, 930 (D. Kan. 2007) (citing *In re Univ. Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003)); *see also Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1524 (D. Kan. 1995) (concluding that "deceptive trade practices under the KCPA are subject to Rule 9(b)'s requirements of particularity").

[14]*Weckhorst v. Kan. State Univ.*, 241 F. Supp. 3d 1154, 1176 (D. Kan. 2017) (citing *Thompson*, 505 F. Supp. 2d at 930); *see also Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

3

practice in 2013. Today, these fake sales are publicized to Kansas consumers through in-store, print, web, and/or television ads.

Ms. Cavlovic alleges she was a victim of this pricing scheme when she purchased a pair of 14-carat gold hoop earrings from a J.C. Penney store in Kansas on September 23, 2014.[15] The earrings showed an original price of $524.98, but they were sixty percent off with an additional twenty-five percent discount. After the discounts, Ms. Cavlovic paid a total of $171.66 for the earrings. When she got home and opened the box, she found a price sticker that had been crossed out. Upon examining it, she could see that "$225.00" had been blacked out. Ms. Cavlovic alleges that the $225.00 was a "former," "original," or "regular" price, and based on that price and the discounts, she should have paid only $73.58 for the earrings.[16] As a result of the fake sales scheme, she was induced to pay 233.3% the price she should have been required to pay with the advertised discounts ($73.58).[17]

Ms. Cavlovic alleges that the different pricing strategies that were in place before, during, and after former CEO Ron Johnson's tenure, as well as statements made by Johnson himself, evidence J.C. Penney's use of fake sales. In 2012, J.C. Penney halted the fake sales scheme and implemented a "Fair and Square" strategy, which offered products at everyday low prices. Johnson admitted that before the "Fair and Square" campaign, the company manipulated

---

[15]Doc. 1-1 at 8.

[16]*Id.* at 10.

[17]*Id.*

4

consumer behavior by "systematically advertising false comparisons" for years.[18]  Johnson also stated that J.C. Penney would get rid of what he called "fake prices."[19]

But in 2013, after losing profits under the new pricing approach, J.C. Penney fired Johnson and reinstated its fake sales strategy.  The current fake sales scheme is indistinguishable from the one that was in place prior to February 2012.

In 2015, J.C. Penney settled the *Spann v. J.C. Penney Corp., Inc.* case in which the plaintiff was a consumer who brought a class-action suit against J.C. Penney, alleging it falsely advertised original and sale prices.[20]  In the settlement agreement, J.C. Penney agreed to discontinue its fake price scheme.[21]  Despite this, the company continues to raise its prices above the market value with no intention of selling its products at these artificial prices.  The markups are made solely to offer products at illusory sale prices.  This practice deceives customers into thinking that the false former prices are what J.C. Penney regularly charges for the goods.  However, J.C. Penney's private-branded and exclusive-branded apparel and accessories are never sold at the advertised "regular" price because whenever the "regular" price is advertised, the items are on sale.  Many of the "discounted" and "sale" prices are actually higher than the

---

[18]Doc. 1-1 at 5 (quoting Johnson at the January 25, 2012 J.C. Penney Analyst Meeting Day 1, "So you'll see here nothing was bought at regular price, fewer than one out of 500 units … in fact, if you look at the total, … three-quarters of everything sold in the store was at a 50% off or greater discount").

[19]Doc. 30 at 4.  Although this statement first appears in Ms. Cavlovic's opposition to J.C. Penney's motion to dismiss, rather than in her Complaint, the Court will consider these statements because they are consistent with statements Ms. Cavlovic alleges in her Complaint.  *See Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) (explaining that courts may consider additional facts or theories asserted in a response brief to a motion to dismiss "if they were consistent with the facts and theories advanced in the complaint").

[20]314 F.R.D. 312, 316 (C.D. Cal. Jan. 2016).

[21]*Id.* at 326 (referring to settlement agreement, which states "specifically, JCPenney agrees that any former price to which JCPenney refers in its price comparison advertising will be the actual, bona fide price at which the item was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of business, honestly and in good faith").

"regular" prices for those same items during the "Fair and Square" era. J.C. Penney has made millions from this scheme in Kansas and across the United States.

## III. Discussion

J.C. Penney moves to dismiss Ms. Cavlovic's Complaint, arguing her fraud claims are implausible because she did not eliminate "obvious alternative explanations" and she failed to plead her claims with particularity under Rule 9(b). Ms. Cavlovic responds that she need not eliminate every alternative explanation to survive a motion to dismiss, and that her pleading put J.C. Penney on sufficient notice of her fraud claims under Rule 9(b).

### A. Alternative Explanations

J.C. Penney asserts that Ms. Cavlovic's Complaint rests on the assumption it committed fraud by using the $524.98 price to calculate the discounts instead of the previously displayed $225.00 price. J.C. Penney argues this theory "assumes that retailers in Kansas may never change how they price their products, and are obligated to offer products at a single price forever."[22] However, this incorrectly summarizes the Complaint. Instead, Ms. Cavlovic's Complaint stems from the theory that J.C. Penney violated the KCPA by "artificially raising the price and then lowering it to suggest a deal,"[23] and that the earrings she purchased were part of J.C. Penney's illegal fake sales scheme.[24]

J.C. Penney further argues that even if Ms. Cavlovic's theory is plausible, her Complaint does not contain factual allegations to support her speculative assumption that the crossed out $225.00 was the true price at the time she purchased the earrings.[25] J.C. Penney raised several

---

[22] Doc. 18 at 5.
[23] Doc. 1-1 at 1–2 (citing K.S.A. § 50-626(b)(7)).
[24] Doc. 18 at 4.
[25] *Id.* at 5–6.

6

possible alternative explanations for the $225.00 price tag in letters to the Kansas Attorney General (written in response to the Attorney General's investigation request) and again raises them here. It contends $225.00 could have been an outdated price that had not been used for many months, or a prior discounted price that associates failed to remove from the box.[26]

J.C. Penney claims that because Ms. Cavlovic has failed to dispense of these alternative explanations, she has not pleaded a plausible fraud claim, citing *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, a Ninth Circuit case in which the court explained a complaint must allege facts that "tend to exclude a plausible and innocuous alternative explanation."[27] In *Eclectic Properties*, the plaintiffs alleged the defendants engaged in a rent inflation conspiracy to make the defendants' properties appear more valuable to third parties.[28] The district court granted the defendants' motion to dismiss and the Ninth Circuit affirmed, stating,

> when faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible.[29]

The court in *Eclectic Properties* noted that the complaint provided no factual support for the allegation that the properties' value was less than what was being charged for rent.[30] It did not cite any sources for the alleged "true" value, nor did it explain the method used to calculate it.[31] Rather, the complaint presented only a conclusory assertion that the increasing prices were

---

[26] *Id.* at 6.

[27] 751 F.3d 990, 998 (9th Cir. 2014).

[28] *Id.* at 994.

[29] *Id.* at 996 (quoting *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)).

[30] *Id.* at 999.

[31] *Id.*

part of a fraudulent scheme, which was insufficient to negate the alternative explanation that the price increase was actually caused by changing market conditions. In other words, the mere fact that there were price increases was not enough to raise a plausible inference of an illegal price-fixing conspiracy because the plaintiffs did not support their claim with factual allegations.[32]

When a complaint presents a plausible inference of liability, the *degree* of plausibility only becomes relevant when an obvious alternative explanation overwhelms any inference that liability might exist.[33] For example, in *Ashcroft v. Iqbal*, the Supreme Court found that the plaintiff's discrimination claim was not plausible because the "obvious alternative explanation," that the policy at issue directed law enforcement to arrest and detain individuals who were illegally present in the United States and who had potential connections to those who committed terrorist attacks, overwhelmed the plausibility of unlawfully targeting Arabs and Muslims.[34] But absent an "obvious" alternative explanation, it is not for the court to decide on a 12(b)(6) motion which is more likely between two plausible inferences that may equally be drawn from the factual allegations in a complaint.[35] It is only when a plaintiff's allegations do not exclude alternative explanations because they are stuck in "neutral territory" that the allegations do not meet the plausibility standard required by *Iqbal* and *Twombly*.[36]

---

[32]*Id*.

[33]*Doe v. Univ. of Colo., Boulder ex rel. Bd. of Regents of Univ. of Colo.*, 255 F. Supp. 3d 1064, 1076 (D. Colo. May 26, 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)).

[34]*Iqbal*, 556 U.S. at 682.

[35]*See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d. Cir. 2012); *see also Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 42–43 (1st Cir. 2013) ("At the pleadings stage, a district court may not choose between two plausible inferences that may be drawn from factual allegations."); *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 597 (S.D.N.Y. 2015) ("A court ruling on a motion [to dismiss] may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version equally or even more plausible.").

[36]*Green Cycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d 438, 447 (N.D. Cal. 2017).

As the discussion above makes clear, a plaintiff's complaint need not exclude *all* alternative explanations to survive a motion to dismiss. What the law requires is a complaint that states factual allegations sufficient to give rise to a plausible claim to relief.[37] Such allegations are not plausible if an obvious alternative explanation *overwhelms* any plausible inference of fraud.[38]

Certainly, J.C. Penney raises some possible innocuous reasons for the varying price tags. But J.C. Penney's alternative explanations are not "so obvious" that they render Ms. Cavlovic's claim implausible.[39] As explained below, Ms. Cavlovic presents a plausible claim of fraud that satisfies the heightened pleading standard under Rule 9(b).[40] She is not required to refute J.C. Penney's alternative explanations at the pleading stage because they do not *overwhelm* her plausible allegations of fraud.[41] Accordingly, the Court finds that J.C. Penney's proffered alternative explanations do not require dismissal of Ms. Cavlovic's claims.

Furthermore, unlike the complaint in *Eclectic Properties*, Ms. Cavlovic alleges more than just the conclusion that two different price tags must equal fraud. In addition to the varying price stickers on the earrings, she cites secondary sources and statements from Ron Johnson to support her conclusion that the $524.98 price was artificial. The statements by Johnson, combined with J.C. Penney's former "Fair and Square" campaign, provide factual support that—drawn in Ms. Cavlovic's favor and assumed to be true—create a plausible inference that the earrings were part of the fake pricing scheme. Thus, she is not required to negate the alternative explanations

---

[37]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[38]*Univ. of Colo.*, 255 F. Supp. 3d at 1076.

[39]*See McDonough v. Anoka Cty.*, 799 F.3d 931, 953 (8th Cir. 2015) ("We cannot say that this alternative explanation is so obvious as to render Mitchell's claim of impermissible purpose facially implausible.").

[40]*See infra* Part III.B.

[41]*Univ. of Colo.*, 255 F. Supp. 3d at 1076.

provided by J.C. Penney at the pleading stage because they do not overwhelm an inference of fraudulent pricing.

### B.   Heightened Pleading Standard

J.C. Penney also argues that Ms. Cavlovic did not meet her burden under Rule 9(b) to plead with particularity "why" or "how" the price was supposedly false.[42] It cites *Jacobo v. Ross Stores, Inc.*, where the court held that "without any allegations explaining why or how Defendant's advertisements were deceptive, Plaintiffs' claims cannot satisfy the heightened pleading requirement of 9(b)."[43] J.C. Penney cites two additional cases for the proposition that Ms. Cavlovic must allege "how" and "why" the fraud occurred, including *Rael v. New York & Co.*[44] and *Nunez v. Saks, Inc.*[45] In *Rael*, the court required fraud allegations to be accompanied by the "'who, what, where, and how' of the misconduct charged."[46] In *Nunez*, the court looked to whether the plaintiff alleged the "how" and "why" of the defendant's fraudulent behavior.[47]

The Tenth Circuit has never held that Rule 9(b) requires plaintiffs to plead with particularity "how" or "why" the alleged misrepresentations were actually false.[48] Under Rule 9(b), complaints alleging fraud must "set forth the time, place and contents of the false representations, the identity of the party making the false statements and the consequences

---

[42] Doc. 18 at 6–7.

[43] No. CV-15-04701-MWF-AGR, 2016 WL 3482041, at *3 (C.D. Cal. Feb. 23, 2016).

[44] No. 16-cv-369, 2016 WL 7655247, at *5 (S.D. Cal. Dec. 28, 2016) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

[45] No. 15-CV-2717, 2017 WL 1184058, at *5 (S.D. Cal. Mar. 22, 2017) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

[46] *Rael*, 2016 WL 7655247, at *5 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

[47] *Nunez*, 2017 WL 1184058, at *6.

[48] *See Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

thereof."[49] In *Gonzalez v. Pepsico, Inc.*, this Court held that for purposes of Rule 9(b), particularity includes the "time, place and content of the alleged wrongful conduct, as well as the identities of the wrongdoers and the harm caused by plaintiffs' reliance on any false representation."[50] The rule does not require "omniscience," but merely requires that the fraud be pled with enough particularity to "put defendants on notice as to the nature of the claim."[51]

Ms. Cavlovic's allegations satisfy the requirements of Rule 9(b) as interpreted by the Tenth Circuit. Her Complaint sets forth the time (September 23, 2014), the place (J.C. Penney store in Kansas), the content (14k gold hoop earrings priced at $524.98 and discounted at sixty percent on top of twenty-five percent that had another price sticker inside the box that said $225.00), the identity of the party responsible for the fraudulent conduct (J.C. Penney), and the harm caused (being "duped" into paying more for the earrings based on the fake sale).[52]

Even if Ms. Cavlovic was required to plead the "why" and "how," she has done so. She alleged that the $524.98 price was fraudulent because it was not the true price of the earrings and claimed J.C. Penney duped her by using an illegal fake sales method that makes customers believe the deal (discounted price) is better than it really is. Thus, the Court finds that Ms. Cavlovic has satisfied the requirements of Rule 9(b) and that her allegations are sufficient to put J.C. Penney on notice of her fraud claims. J.C. Penney's motion to dismiss is therefore denied.

## IV.   Conclusion

Ms. Cavlovic has presented plausible claims of fraud under the KCPA that satisfy the notice requirements under Rule 9(b). Furthermore, the "alternative explanations" offered by J.C.

---

[49]*Id*. at 1235.

[50]489 F. Supp. 2d 1233, 1247 (D. Kan. 2007).

[51]*George v. Urban Settlement Servs.*, 833 F.3d 1242, 1257 (10th Cir. 2016) (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)).

[52]Doc. 30 at 7, 15.

Penney do not overwhelm the plausible inference of fraud Ms. Cavlovic alleges in her Complaint.  For these reasons, the Court denies J.C. Penney's motion to dismiss Ms. Cavlovic's Complaint.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant J.C. Penney Corporation, Inc.'s Motion to Dismiss (Doc. 17) is **denied**.

**IT IS SO ORDERED.**

Dated: June 7, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
